OPINION
{¶ 1} Appellant Richard B. Henderson appeals his conviction and sentence for two counts of possession of cocaine. On May 5, 2005, Henderson was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A), and, in a separate matter, on June 27, 2005, Henderson was indicted on one count of aggravated robbery, in violation of R.C. 2913.01(K) and R.C. 2911.01(A)(1), with a gun specification, and another count of possession of cocaine. Henderson initially pled not guilty to all charges, but then later entered pleas of guilty to the possession charges in exchange for the State's dismissal of the aggravated robbery charge and its accompanying gun specification. The State did not agree to nor recommend a specific sentence. On December 19, 2005, the trial court sentenced Henderson to a maximum twelve month sentence on each charge, to be served consecutively, for a total term of imprisonment of two years.
 {¶ 2} Henderson asserts two assignments of error. His first assignment of error is as follows:
 {¶ 3} "THE TRIAL COURT SENTENCE WAS SUBSTANTIALLY DISPROPORTIONATE TO PUNISHMENT NECESSARY AND THE COURT GROSSLY ABUSED ITS DISCRETION IN SENTENCING THIS DEFENDANT TO AN ABSOLUTE MAXIMUM AND CONSECUTIVE PRISON TERM."
 {¶ 4} Henderson relies on State v. Foster, 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-0856, in which the Ohio Supreme Court determined that R.C. 2929.14(C) and R.C. 2929.14(E), pursuant to which the trial court sentenced Henderson, are unconstitutional because they require judicial fact-finding before maximum or consecutive sentences are imposed, in violation of the Sixth Amendment right to a trial by jury. The Foster court severed the unconstitutional provisions from the felony sentencing scheme, and the Foster decision requires re-sentencing for cases pending on direct review. Id. Since Henderson received maximum, consecutive sentences, re-sentencing is required. Henderson's first assignment of error is sustained. Reversed and remanded for re-sentencing.
 {¶ 5} Henderson's second assignment of error is as follows:
 {¶ 6} "THE TRIAL COURT FAILED TO ADVISE THE DEFENDANT OF HIS 5TH AMENDMENT U.S. CONSTITUTIONAL RIGHT AND OHIO [sic] AND STATUTORY RIGHT NOT TO BE COMPELLED TO TESTIFY IN HIS OWN BEHALF AND HIS RIGHT TO REMAIN ABSOLUTELY SILENT THROUGHOUT HIS TRIAL."
 {¶ 7} "The trial court's acceptance of a guilty plea will be affirmed if the court engaged in a meaningful dialogue with the defendant which, in substance, explained the pertinent constitutional rights in a manner reasonably intelligible to that defendant." State v. Anderson (1995),108 Ohio App.3d 5, 9, 669 N.E.2d 865. Crim. R. 11(C)(2)(c) provides "the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally * * *" and "[i]nforming the defendant and determining that the defendant understands that by the plea the defendant is waiving the [right] * * * to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself * * * ." The rule facilitates " a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." State v. Nero (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474. Crim.R.11(C) does not enumerate a defendant's right "to remain silent", a term of art synonymous with the Fifth Amendment privilege against self-incrimination.
 {¶ 8} "'Failure to use the exact language contained in Crim.R.11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant.'" State v. Thomas,116 Ohio App.3d 530, 533,688 N.E.2d 602, quoting State v. Ballard (1981),66 Ohio St.2d 473, 423, N.E.2d 115, paragraph two of the syllabus. "The purpose of the procedure required by Civ. R. 11(C) is to ensure that the defendant subjectively understands each of the rights concerned and that he waives it by his plea of guilty * * * . That proposition must be demonstrated by the record. The preferred method is to use the language contained in the rule, stopping after each right and asking whether the defendant understands that right and knows that his plea waives it. Id. When that is not done, the record must, in some way, affirmatively demonstrate the propositions made necessary by the rule." Id.
 {¶ 9} After the trial court determined Henderson's age, schooling, ability to read and write, that Henderson had read the plea forms, understood them, was free from the influence of any drug, alcohol or medication or anything else to impair his understanding of the proceedings or the charges against him, and that he was satisfied with his representation, the following colloquy occurred before Henderson entered his pleas:
 {¶ 10} "JUDGE: * * * Let me go over the forms that are in front of you then and let me tell you the rights you give up as a result of changing your plea here. First of all you have the right to trial by jury, where twelve men and women must all find you guilty beyond a reasonable doubt. Each case would be considered separately and actually you would have two different juries here, * * * on each different charge. * * * and they have to considered [sic] it separately. So there are two panels of twelve men and women who would have to find you guilty beyond a reasonable doubt on each charge. You also give up your right to have those twelve men and women to find a sentencing specifications [sic] that might apply to you, to these cases. You give up your right to confront those who would accuse you of these crimes, * * *and have Ms. Wuebben ask them questions. You also give up your right to * * * call witnesses for yourself. And if they are reluctant to come here the Court would order them to come here to testify for you. And finally, you give up your right to have these matters proven beyond a reasonable doubt and trials where you cannot be forced to testify against yourself. And do you understand all those rights sir?
 {¶ 11} "MR. HENDERSON: Yes, yes sir.
 {¶ 12} "JUDGE: Do you understand that by pleading guilty you give up all those rights?
 {¶ 13} "MR. HENDERSON: Yes sir."
 {¶ 14} The trial court concluded the colloquy by ascertaining that Henderson's pleas were not due to threats, coercion or promises.
 {¶ 15} While the trial court used the word, "forced," rather than "compelled," the requisite demonstration of Henderson's understanding of his right not to be compelled to testify against, nor incriminate, himself is clear from the record before us. In fact, "forced" is a word more readily understood by the common man, as it is far more frequently used than its synonym, "compelled." While the trial court neglected to inquire of Henderson's understanding of each right individually as the Ohio Supreme Court prefers, that failure does not invalidate Henderson's pleas. In other words, the record establishes "the propositions made necessary by the rule." Id. Since the record reveals a meaningful dialogue between the trial court and Henderson, and that Henderson's constitutional rights were explained in a reasonably intelligible manner, Henderson's second assignment of error is overruled.
Reversed and remanded for re-sentencing.